IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
**Civil Action No. 1:17CV00150-MRR-DLH**

GREGORY ARMENTO,

    Plaintiff,

vs.

ASHEVILLE BUNCOMBE
COMMUNITY CHRISTIAN
MINISTRY, INC.,

    Defendant.

**MEMORANDUM IN SUPPORT OF ABCCM'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## INTRODUCTION

This matter was initially filed on June 12, 2017 by Plaintiff Gregory Armento against Asheville Buncombe Community Christian Ministry, Inc. ("ABCCM"). [Doc. 1]. In Counts I, II, and III of his Complaint, Plaintiff's asserts claims related to "Misclassification of an Employee as a Volunteer" [Doc. 1 ¶¶ 37-59, 62], "Failure to Pay Minimum Wage and Overtime" [Doc. 1 ¶¶ 61-61, 66-100], and "Retaliation and Wrongful Termination" [Doc. 1 ¶¶ 101-127], respectively. As set forth in this Memorandum, Plaintiff's claims in these Counts are subject to summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The remainder of his claims are subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure,

as addressed in a separate Motion and Memorandum filed contemporaneously herewith.

## FACTUAL BACKGROUND

ABCCM is a nonprofit organization supported by 284 churches throughout Western North Carolina which provides services to individuals in need through its Jail Ministry, Medical Ministry, Crisis Ministry, Homelessness Services, and Veteran's Services. [Doc. 47 ¶¶ 3-4]. ABCCM's Veteran's Restoration Quarters ("VRQ") provides transitional supportive housing to homeless veterans and receives funding from the Veteran's Administration through a grant per diem to cover the cost of providing counseling, housing and other services to homeless veterans (the "GPD Program" herein). [*Id.* ¶ 5]. Homeless veterans participating in the GPD Program are entitled to 24 months of funding, within which time they are expected to have obtained employment and be able to transition to permanent housing. [*Id.* ¶ 6].

Residents at the VRQ in the GPD Program who are not employed are generally expected to perform a minimum of twenty service hours per week. [*Id.* ¶ 7]. Residents who are enrolled as part-time students or have part-time employment are expected to perform ten service hours per week, while residents who are employed full time or are enrolled as full-time students are not required to perform

service hours. [*Id.*]. The service hours requirement is in furtherance of the eleemosynary purpose of ABCCM, allowing residents to develop time management skills, job skills, and to develop a sense of purpose, while also performing work that is essential to keeping the VRQ operating (e.g. cleaning the kitchen, cleaning common areas, staffing the front desk, driving a shuttle, etc.). [*Id.* ¶ 8].

Plaintiff was enrolled in the GPD Program at the VRQ on September 2, 2015. [*Id.* ¶ 9]. As part of his enrollment in the GPD Program, Plaintiff was provided a Service Hours Requirements form [Doc. 1-2], a Service Hours Intake Information form [Doc. 47-2], and a Veterans Restoration Quarters Resident Handbook [Doc. 3-9], which further explained the service hours requirements. The Handbook states, in part:

> Service Hours:
> - All unemployed residents must perform service hours to remain motivated and engaged with campus life.
> - Service hours are performed in housekeeping, maintenance, the kitchen, computer lab or at the front desk.
> - Any missed days or hours must be made up. Please consult department head to make up missed hours.

[Doc. 3-9, page 10 of 15]. Plaintiff also received and signed a VRQ Resident Handbook Agreement [Doc. 47-3], which states:

> I, Gregory Armento, have received and read the Veteran's Restoration Quarters Handbook. I have had the opportunity to ask questions and fully understand all of its contents.
>
> I agree to follow all of the policies, rules and guidelines included in the handbook. I understand that if I fail to abide by the written contents of this

handbook I will be subject to disciplinary procedures to include warnings, strikes, 90 day protocols and/or immediate dismissal from the program.

Plaintiff performed service hours at the VRQ from approximately September 4, 2015, until January 12, 2017. [Doc. 47 ¶13]. With the exception of a few hours on September 4, 2015 [see, Doc. 3, page 4 of 59], all of Plaintiff's service hours were either as a front desk attendant at the VRQ or as a shuttle driver for residents of either the VRQ or the Steadfast House, ABCCM's shelter for women and children (which is also located in Asheville). [Doc. 47 ¶14].

VRQ residents in the GPD Program who do not have a job may be able to participate in a temporary employment program (the "1,000-hour program"). [*Id.* ¶15]. The purpose of the 1,000-hour program is to provide residents with an opportunity to develop job skills and give them a chance to earn money to help effectuate their transition to self-sufficiency. [*Id.*]. VRQ residents participating in the 1,000-hour program may work up to 1,000 hours. [*Id.* ¶16]. Jobs in the 1,000-hour program are in and around the VRQ facility, such as attending or managing the front desk. [*Id.*]. Many residents do not complete the 1,000-hour program because they find full-time employment with local employers. [*Id.*]

Plaintiff became a participant in the 1,000-hour program and, as such, was paid for work he performed at the VRQ front desk from September 9, 2015, through June 1, 2016. [*Id.* ¶17]. During that time period, he was paid $9.00 per hour for 1007 hours of work at the VRQ front desk. [*Id.*].

4

Although he was compensated through the 1,000-hour program for time he spent as a front desk attendant, Plaintiff was never compensated for time he spent as a shuttle driver; rather, all the time he spent as a shuttle driver until January 12, 2017, was in fulfillment of his service hours requirements. [*Id.* ¶18]. There is no evidence that anyone from ABCCM ever told Plaintiff that his work as a shuttle driver would be compensated or considered by ABCCM to be anything other than service hours or volunteer work. [*Id.*].

At any time, Plaintiff could have opted out of the service hours he was performing as a shuttle driver by becoming employed full time outside of the VRQ, enrolling in school full time, becoming employed part time outside of the VRQ and enrolling in school part time, or choosing to leave the VRQ facility. [*Id.* ¶19].

Plaintiff was permitted to stop performing service hours on or about January 12, 2017, in hopes that he would focus exclusively on finding employment outside the VRQ and successfully transitioning to self-sufficiency. [*Id.* ¶24]. He did continue to volunteer time as a shuttle driver thereafter, but he was under no obligation, through the service hours program or otherwise, to do so. [*Id.*].

VRQ residents, such as the Plaintiff, are furnished with room at board at the VRQ by ABCCM; therefore, by definition, VRQ residents, such as the Plaintiff, who perform service hours and/or who are in the 1000-hour program, are furnished with room and board. [*Id.* ¶28]. The cost of room and board furnished to the Plaintiff was

$29.25 per day. [*Id.* ¶29]. This cost is based upon the costs of depreciation of the real estate, depreciation of personal property (including vehicles, equipment, and furniture), supplies (including kitchen, office, housekeeping, maintenance, and non-donated food), payroll (including kitchen, security, maintenance, and administrative staff), and utilities. [*Id.*]. The daily cost of these items, using actual figures from September of 2015 through January of 2017, was $4,270.60 for the whole facility; dividing this figure by the number of beds at the VRQ, 146, yields a daily, per-bed cost of $29.25. [*Id.*].

Plaintiff estimated, pre-discovery and without any actual documents as support, that the time he claims he should be compensated as a shuttle driver was a total of 1155 hours, broken down as follows:

- 891 "on duty" hours for days he believes he was on the schedule (he assumes 11 hours per day for these days);
- 96 "waiting time" hours for days he believes he was not on the schedule, but when he could have been called to do a run if he was on campus (he assumes .5 hours per day for these days);
- 168 "on call" hours for nights he was on call, during the time he was required to be on campus due to curfew, from 12:00 midnight to 6:00 a.m. (he assumes 6 hours per day for these days).

[Doc. 4-3]. In discovery, ABCCM produced shift reports documenting the actual time Plaintiff spent driving a shuttle. [Doc. 47 ¶23]. The shift reports document which shuttle van was taken, the time van left, the time it returned, and who was driving it. [*Id.*]. According to these documents (summarized in spreadsheets also produced in discovery and filed as an exhibit to Doc. 47), the actual amount of time Plaintiff spent driving a shuttle during the time period he claims he is entitled to compensation, was 299.5 hours. [*Id.* ¶25].

Plaintiff further claims ABCCM failed to compensate him for 97 overtime and 293.5 regular hours for work he did at the VRQ front desk from September 8, 2015, through June 1, 2016, for a total of $3,951.00. [Doc. 33 page 5 of 8 and Doc. 33-1].

When Plaintiff's employment was terminated on or about June 1, 2016, it was because he had reached the end of the 1,000-hour program. [*Id.* ¶33]. The termination of Plaintiff's employment was not in retaliation for the various complaints Plaintiff had made against the ABCCM and/or the VRQ. [*Id.*].

Plaintiff became ineligible to continue in the grant per diem program on or about September 2, 2017, 24 months after he was first enrolled. [*Id.* ¶26]. At the end of Plaintiff's eligibility for the grant per diem program, ABCCM staff assisted him in qualifying for another housing program that was available through the Veterans Administration, provided him with a hotel room until more permanent housing

7
Case 1:17-cv-00150-MR-DSC   Document 48   Filed 07/02/18   Page 7 of 19

through that program was identified, provided him with totes for packing and moving his belongings, and provided transportation for him and his belongings from the VRQ to the hotel. [*Id.* ¶27].

## STANDARD OF REVIEW

Summary judgment should be granted where it appears that the pleadings, depositions and answers, and other documentary evidence show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. To defeat a motion for summary judgment, the non-moving party must demonstrate that there are specific and material facts in dispute which create a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the moving party, disposition by summary judgment is appropriate." *United States v. Lee*, 943 F.2d 366, 368 (4th Cir.1991).

## ARGUMENT

### I. PLAINTIFF WAS A VOLUNTEER AS A SHUTTLE DRIVER.

Plaintiff appears to be pursuing Counts I and II of his Complaint under the wage and hour provisions of the Fair Labor Standard Act, 29 U.S.C. §§ 201-207 (the

"FLSA") and the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1, *et. seq.* (the "NCWHA"); however, the NCWHA has no application where the FLSA governs the employer-employee relationship. *See* N.C.Gen.Stat. §95-25.14.

Although ABCCM does not concede that the FLSA applies in this case, Count I of Plaintiff's Complaint is subject to summary judgment even in the event of FLSA application or in the event that a NCWHA claim persists even in the absence FLSA application[1]. Count I of Plaintiff's Complaint relates to his activities as a shuttle

---

[1] Regarding the appropriate authority for interpreting the NCWHA, courts generally look to the FLSA for guidance when interpreting the NCWHA. *Miller v. Colorcraft Printing Co.*, No. 3:03–CV–51–T, 2003 WL 22717592, at *3 (W.D.N.C. Oct. 16, 2013); *Sullivan v. Knight's Med. Corp.*, No. 5:12–CV–592–FL, 2013 WL 4524897, at *5 (E.D.N.C. Aug. 27, 2013); and *Garcia v. Frog Island Seafood, Inc.*, 644 F.Supp.2d 696, 707 (E.D.N.C.2009)). As the North Carolina Court of Appeals explained in *Laborers' Int'l Union of North Am., AFL–CIO v. Case Farms, Inc.*, 127 N.C.App. 312, 488 S.E.2d 632 (1997), "[t]he [NCWHA] is modeled after the Fair Labor Standards Act." Id. at 634. Additionally, the North Carolina Administrative Code provides:
> Where the legislature has adopted the language or terminology of the Fair Labor Standards Act (F.L.S.A.) for the purpose of facilitating and simplifying compliance by employers with both the federal and state labor laws, or has incorporated a federal act by reference, the Department of Labor will look to the judicial and administrative interpretations and rulings established under the federal law as a guide for interpreting the North Carolina law. Such federal interpretations will therefore be considered persuasive and will carry great weight as a guide to the meaning of the North Carolina provisions and will be controlling for enforcement purposes. However, where there are intentional differences in the language of the North Carolina statutes, or where the laws of this State or the authority granted to the Commissioner of Labor of North Carolina require a different interpretation, *504 the federal decisions will not be binding on the Department.

13 N.C. Admin. Code 12.0103.

driver. This Count is subject to summary judgment due to the fact that the uncontroverted evidence is that Plaintiff's activities as a shuttle driver were as a volunteer, in fulfillment of the service hours he agreed to perform as part of his residency at the VRQ. In other words, there was no employer-employee relationship in Plaintiff's role as a shuttle driver.

People seeking compensation pursuant to the FLSA "bear the initial burden of proving that an employer-employee relationship exists and that the activities in question constitute employment for purposes of the Act." *Benshoff v. City of Virginia Beach,* 180 F.3d 136, 140 (4th Cir.1999). However, the Act provides little guidance as to what constitutes an employer-employee relationship or "employment" sufficient to trigger its compensation provisions. An "employee" is defined as "any individual employed by an employer," 29 U.S.C.A. § 203(e)(1), and an "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee," *id.* at § 203(d). To "employ" means "to suffer or permit to work." *Id.* at § 203(g). But this definition was "not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another," nor should it be interpreted so as to "sweep under the Act each person who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, work[s] in activities carried on by other persons either for their pleasure or

profit." *Walling v. Portland Terminal Co.,* 330 U.S. 148, 152, 67 S.Ct. 639, 91 L.Ed. 809 (1947).

The question of whether an individual is an employee or a volunteer is a matter of law to be determined by the court, see *Castillo v. Givens,* 704 F.2d 181, 185 (5th Cir.1983), *cert. denied,* 464 U.S. 850, 104 S.Ct. 160, 78 L.Ed.2d 147 (1983), based upon "the objective facts surrounding the services performed to determine whether the totality of the circumstances" establish volunteer status, *Cleveland v. City of Elmendorf,* 388 F.3d 522, 528 (5th Cir. 2004), or whether, instead, the facts and circumstances indicate employee status.

The FLSA does not itself define "volunteer"; however, the Department of Labor has promulgated regulations under the FLSA for purposes of public agency exceptions which, although not directly applicable in this case, may be instructive. Under those regulations, a "volunteer" is an "individual who performs hours of service . . . for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered." 29 C.F.R. § 553.101(a).

In this case, the undisputed evidence is that Plaintiff was made aware of the service hours program upon taking up residence in the VRQ and that he voluntarily agreed to the program. [Doc. 47 ¶¶10-12]. Although he obviously now feels entitled to compensation for his service as a shuttle driver, there is simply no evidence he

11

was ever promised or paid such compensation, nor that he ever had the expectation ABCCM would voluntarily pay him such compensation. [Doc. 47 ¶18]. Further, Plaintiff was free to opt out of his shuttle driver service by becoming employed full time outside the VRQ, enrolling in school full time, leaving the facility, or obtaining an exemption from the service hours requirement as occurred from January 12, 2017 until he left the VRQ facility in September of 2017. [Doc. 47 ¶¶19, 24]. Under these circumstances, it would be neither accurate nor consistent with authorities outlined above to categorize Plaintiff's shuttle driver service as "employment".

## II. PLAINTIFF'S MINIMUM WAGE AND OVERTIME CLAIMS FAIL BECAUSE THEY ARE ECLIPSED BY THE COST OF THE ROOM AND BOARD HE WAS FURNISHED.

Plaintiff's claims under both Counts I and II fail because the alleged value of those claims is eclipsed by the cost of the room and board Plaintiff was furnished over the time span of those claims.

Under the FLSA, " '[w]age' paid to any employee includes the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees." 29 U.S.C. §203(m); *see also* 29 C.F.R. §531.33[2]. The fact that ABCCM has taken the position

---

[2] "Cases at least since *Williams v. Jacksonville Terminal Co.,* 315 U.S. 386, 403-04, 62 S.Ct. 659, 86 L.Ed. 914 (1942), cite the 'reasonable costs' provision in the context of private actions. While there seems to be nothing in the either the statute

that the FLSA does not apply and/or that Plaintiff was not an employee for purposes of his service hours does not preclude ABCCM from getting a credit for the costs of room and board in the event of the Court finding to the contrary. *See Archie v. Grand Cent. P'ship, Inc.*, 86 F. Supp. 2d 262 (S.D.N.Y. 2000). A similar situation existed in *Donovan v. Tony and Susan Alamo Foundation,* 567 F. Supp. 556, 563, 574 (W.D.Ark.1982), *mod. on other grounds,* 722 F.2d 397 (8th Cir.1983), *aff'd,* 471 U.S. 290, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985), where "volunteers" who had worked were found to have been employees for purposes of minimum wage. The court allowed deduction for those reasonable costs deemed part of their wages even though the defendant had previously (and unsuccessfully) argued the plaintiffs had not been employees.

In the instant case, it is undisputed that ABCCM customarily furnishes room and board to people in Plaintiff's position. [Doc. 47 ¶28]. Further, it is undisputed that the daily cost of that room and board is $29.25. [Id. ¶29].

Plaintiff's claims in Count II of his complaint involve compensation he claims for his time as a front desk attendant from September 8, 2015 through June 1, 2016, which is 266 days. [Doc. 33-1]. Multiplying $29.25 by 266 days yields $7,780.50.

---

or the regulations that explicitly requires a court to allow for 'reasonable costs' in cases when such costs have not been determined by the Administrator, it is taken for granted in the case law that such allowance should be made." *Archie v. Grand Cent. P'ship, Inc.*, 86 F. Supp. 2d 262, 268 (S.D.N.Y. 2000).

Although ABCCM does not concede the amount or compensability of such time, Plaintiff's claim for such time fails *even by his own figures*. Plaintiff calculates the value of this part of his claim to be $3,951.00, based upon an hourly pay rate of $9.00. [Doc. 33 page 5 of 8 and Doc. 33-1]. This is just over half the cost of the room and board he was furnished during that same time period.

Even adding Plaintiff's shuttle driver claims in Count I to the equation, the value of Plaintiff's claims is eclipsed by the cost of the room and board he was furnished by ABCCM. Although in his calculation of damages Plaintiff uses an hourly figure of $13.07 [Doc. 4-1 page 31 of 42], he offers no forecast of admissible evidence that he would have been paid this amount had he been considered an employee by ABCCM. Rather, the only admissible evidence on this point is from the Affidavit of Scott Rogers, in which Rogers states the Plaintiff, had he been considered an employee as a shuttle driver, would have been paid the same $9 per hour that he was paid as a front desk attendant. [Doc. 47 ¶20].

As for the number of hours Plaintiff spent as a shuttle driver, Plaintiff's pre-discovery estimate is devoid of admissible evidence. [*See generally* Doc. 4-3]. First, it is not based upon any documentation. [*Id*.] Second, it includes "waiting time" he defines as time he was "not on scheduled [sic] to drive, but if on campus he can be called on to perform driving duties". [*Id*.] Finally, Plaintiff's pre-discovery estimate includes "on-call" time he defines as time he "[m]ay be called to perform driving

14
Case 1:17-cv-00150-MR-DSC   Document 48   Filed 07/02/18   Page 14 of 19

duties, and required to remain on campus during hours of 12:00 pm [sic] and 6:00 am (360 minutes)"; in other words, he claims compensation for 6 hours for every night he *may* have been called upon to perform driving duties, when he was otherwise required to be on campus due to the facility curfew and not for reason related to serving as a shuttle driver. [*Id*.; Doc 47 ¶¶21-22].

The only forecasted *admissible* evidence of Plaintiff's hours as a shuttle driver, based upon shift reports which document the time each shuttle van went out, which van it was, who was driving it, and when it came back, comes from the Affidavit of Scott Rogers. [Doc. 47 ¶ 23]. Based upon that Affidavit and the related documentation, the total hours Plaintiff spent as a shuttle driver from November 9, 2015 through January 12, 2017 (at which time he was told he no longer needed to perform service hours and that he should focus exclusively on finding a job outside the VRQ, and after which he appears to concede that any time he spent as a shuttle driver was purely voluntary), was 299.5 hours. [Id. ¶25]. At $9 per hour, this claim would have a value of $2,695.50 (Plaintiff makes no claim for overtime as a shuttle driver).

Adding the $2,695.50 value of Count I to the $3,951.00 value of Count II yields a total of $6,646.50. The cost of room and board during the time span of Counts I and II (September 8, 2015 through January 12, 2017, or 491 days), was

15
Case 1:17-cv-00150-MR-DSC   Document 48   Filed 07/02/18   Page 15 of 19

$14,361.75 ($29.25 per day x 491 days = $14,361.75), more than double the value of those claims.

In the alternative, even using Plaintiff's own hours figure for Count I, which was 1155 hours from November 12, 2015 through January 12, 2017 [Doc. 4-3], multiplied by $9.00 per hour, yields a total of $10,395.00 (again, he does not claim any overtime as a shuttle driver). Adding that to his own figure for damages for Count II, $3,951.00, yields a total value for Counts I and II of $14,346.00. As demonstrated above, the value of room and board for the period of time of Counts I and II in this scenario, September 8, 2015 through January 12, 2017 (491 days), is $14,361.75, still more than the combined value of Counts I and II.

In light of these authorities, figures, and calculations, Plaintiff fails to forecast proof of an essential element of his claims in Counts I and II, and those claims should, therefore, be dismissed under Rule 56 of the FRCP.

### III. THERE IS NO DISPUTE OF MATERIAL FACT AS TO PLAINTIFF'S CLAIM OF RETALIATION OR WRONGFUL TERMINATION.

The retaliation provision of the FLSA renders it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). A plaintiff asserting a prima facie claim of retaliation under the FLSA must show that (1) he engaged in an activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent

to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action. *Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008) (citations omitted).

In response to a properly supported summary judgment motion, the plaintiff can no longer rest on "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," Fed.Rule Civ.Proc. 56(e); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137, 119 L. Ed. 2d 351 (1992).

Without conceding that Plaintiff has sufficiently pled a prima facie claim for causality (*see* ABCCM's Partial Motion to Dismiss filed contemporaneously herewith), ABCCM has submitted the Affidavit of Scott Rogers, setting forth a legitimate purpose for Plaintiff's termination (i.e., his completion of the 1000-hour temporary employment program), and denying retaliation for Plaintiff's various complaints against ABCCM. [Doc. 47 ¶33]. At present, Plaintiff has nothing more than the "mere allegations" of his pleadings, consisting of speculation and conjecture, and has presented no admissible evidence to counter the reason for his termination as stated in the Affidavit of Scott Rogers.

To the extent Plaintiff is pursuing retaliation or wrongful termination claims under N.C.G.S. § 95-241 (the North Carolina Retaliatory Employment Discrimination Act, or "REDA") or North Carolina common law, those claims

should fail for the same reasons his retaliation/wrongful termination claims under the FLSA fail.

## CONCLUSION

Based upon the affidavit, documentary evidence, authorities and arguments set forth above, ABCCM respectfully requests that the Court grant its Motion for Partial Summary Judgment as to Counts I, II, and III of Plaintiff's Complaint.

This 2nd day of July, 2018.

    s/*Dale A. Curriden*
    Dale A. Curriden (NC Bar #24196)
    Stephen B. Williamson (NC Bar #20203)
    VAN WINKLE, BUCK, WALL, STARNES AND DAVIS, P.A.
    P.O. Box 7376
    Asheville, NC 28802-7376
    Telephone: 828-258-2991
    Fax: 828-257-2767
    dcurriden@vwlawfirm.com
    swilliamson@vwlawfirm.com

    Attorneys for Defendant

# **CERTIFICATE OF SERVICE**

I certify that I have this day electronically filed the foregoing MEMORANDUM IN SUPPORT OF ABCCM'S MOTION FOR PARTIAL SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system which will send notification to Plaintiff. Although Plaintiff has requested electronic notification, LCvR 5.3(B) requires that I serve the foregoing on Plaintiff by the conventional methods listed in Rule 5 of the Rules of Civil Procedure. Accordingly, I have also served a copy of the foregoing on Plaintiff by depositing same in a post-paid, properly addressed wrapper in a post office or official depository under the exclusive care and custody of the United States Postal Service and addressed as follows:

>Gregory G. Armento
>408 Depot Street, Apt. 302
>Asheville, NC 28801
>*Pro Se Plaintiff*

This 2nd day of July, 2018.

>*s/Dale A. Curriden*
>Dale A. Curriden