# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
**Civil Action No. 1:17CV00150-MRR-DLH**

GREGORY ARMENTO, *pro se*

                Plaintiff

vs.

ASHEVILLE BUNCOMBE
COMMUNITY CHRISTIAN
MINISTRY, INC.,

                Defendant.

**MEMORANDUM IN
SUPPORT OF ABCCM'S
MOTION TO DISMISS**

## FACTUAL INTRODUCTION

Plaintiff alleges that he was a resident in Defendant Asheville Buncombe Community Christian Ministry, Inc.'s ("ABCCM") homeless shelter starting on September 2, 2016. (Doc 1. ¶ 38, **Plaintiff's Compl.**) He was a participant in its program to "help homeless Veterans achive residential stability, increase their skill levels and/or income, and obtain greater self-determination." (*Id.* ¶ 16-17.) In exchange for ABCCM's service, Plaintiff was required to participate in a service-work program at ABCCM where he would work a number of volunteer hours for the shelter in exchange for ABCCM's services. (*Id.* ¶ 23.) ABCCM also hires a number of its residents as "formal employees" to work for wages (*id.* ¶ 35), and Plaintiff was hired to do work under those terms as well (*id.* ¶ 70). Plaintiff alleges that his work

done in accordance with his service hour obligation should have been compensated and that his work as a "formal employee" was inadequately compensated under state and federal law. (*Id. ¶¶* 54-67; 78-100.) Plaintiff also alleges he was wrongfully terminated from his employment at ABCCM for reporting these problems to a United States Senator. (*Id.*102-37.)

## STANDARD OF REVIEW

In order to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.* A plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, *i.e.,* the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir.2009) (quoting *Twombly,* 550 U.S. at 570).

## ARGUMENT

## I. PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER THE FAIR LABOR STANDARDS ACT (FLSA)

In order for the FLSA to apply, a plaintiff must allege that the employer was involved in "interstate commerce." *Sanchez v. Truse Trucking, Inc.,* 74 F. Supp. 3d 716, 721 (M.D.N.C. 2014) (allegation that defendant's work "involved interstate

2

activity" is an essential element of a claim under the FLSA, *citing Pruell v. Caritas Christi,* 678 F.3d 10, 12 (1st Cir.2012)).   Here, Plaintiff has failed plead any facts sufficient to show how or when ABCCM was involved in interstate commerce. Rather, as Plaintiff alleges, ABCCM owns and operates a homeless shelter in Asheville, North Carolina.  (Doc. 1 ¶ 12.)  The work done there, such as kitchen duty, front desk work, housekeeping, computer lab monitoring, front desk monitoring, and driving a van to the local VA hospital, were all decidedly local. (Doc. 1 ¶ 39, Docs. 1-4; 1-6.)  Because Plaintiff has failed to allege or provide factual support for an essential element of his claim under the FLSA, this claim must be dismissed.

## II.     PLAINTIFF HAS FAILED TO STATE A CLAIM FOR "FAILURE TO MAINTAIN RECORDS."

There is no private right of action for the failure to maintain records in accordance with the FLSA.   *Barton v. v. Pantry, Inc.*, No. 1:04-CV-748, 2006 WL 1367421, at *3 (M.D.N.C. May 17, 2006) ("[29 U.S.C. § 216 (b)] does not allow employees to bring actions, either for civil penalties, damages, or injunctive relief, for violations of the FLSA's record-keeping provisions.   Rather, 'authority to enforce the Act's record-keeping provisions is vested exclusively with the Secretary of Labor.'" (quoting *Elwell v. Univ. Hosp. Home Care Serv.*, 276 F.3d 832, 843 (6th Cir. 2002)).

Similarly, there is no private right of action for the failure to maintain records in accordance with North Carolina's Wage and Hour Act. *Id.* ("[T]he NCWHA does not provide a private right of action for employees to enforce alleged violations of its record-keeping provisions." (citing N.C.G.S. § 95-25.12)).

Counts I & II of Plaintiff's Complaint appears to list "Failure to Maintain Records, Misclassification of an Employee as a Volunteer," and "Failure to Maintain Records Misclassification of a Formal Employee as a Manager," as claims. (Doc. 1 ¶¶ 7; 11.) To the extent Plaintiff's Complaint requests damages for the alleged failure of ABCCM to keep records of his service hours, those claims should be dismissed for failure to state a claim.

## III. PLAINTIFF FAILS TO STATE A CLAIM FOR RETALIATION AND WRONGFUL TERMINATION.

Plaintiff's wrongful termination claim is based on his allegation that he was terminated in retaliation for reporting ABCCM's alleged violation of the FLSA to U.S. Senator Thom Tillis. (Doc. 1 ¶¶111, 127.) Plaintiff alleges this communication was an activity protected by law under 29 U.S.C. §§ 218c & 215 (the FLSA), as well as N.C.G.S. § 95-241 (the North Carolina Retaliatory Employment Discrimination Act, or "REDA"). (Doc. 1 ¶ 127.)

   i. <u>Plaintiff fails to state a claim for retaliation under the FLSA.</u>

4

As stated above, because Plaintiff has failed provide factual support for his claim that ABCCM was a covered employer under the FLSA, any claims he has under the FLSA must fail as a matter of law.

Alternatively, Plaintiff has failed to plead facts sufficient to show that his alleged termination was causally related to any protected activity. "A prima facie showing of causality requires either: (1) that the retaliation closely followed the protected activity, or (2) that the plaintiff put forth a sufficient explanation for the delay between the protected activity and the alleged retaliation." *Reardon v. Herring*, 201 F. Supp. 3d 782, 784 (E.D. Va. 2016) (citations omitted). As to the first method, there is no bright line rule for determining how closely the adverse action must follow the protected conduct, but the 4th Circuit has held that a ten-week delay was sufficient to call causation into question. *Perry v. Kappos*, 489 Fed. Appx. 637, 643 (4th Cir. 2012). When such a delay exists, plaintiff must rely on some other evidence to explain the delay, such as "continuing retaliatory conduct and animus in the intervening period." *Id.*

Here, the latest possible date of Plaintiff's alleged protected activity is his communication with Senator Tillis's office was on February 1, 2016. (Doc. 1 ¶ 111.) Plaintiff alleges he was terminated 17 weeks and 2 days later. (Doc. 1 ¶ 118.) Under *Perry*, therefore, Plaintiff must plead facts sufficient to explain this delay, such as

continuing retaliatory conduct and animus in the intervening period." *Perry v*, 489

Fed. Appx. at 643.

> The conduct deemed sufficiently retaliatory under existing case law is quite serious. E.g. *Lettieri*, 478 F.3d at 650 (finding ongoing animus where plaintiff was stripped of significant job responsibilities, supervisory responsibilities, and ability to meet with clients); *Murphy–Taylor v. Hofmann*, 968 F.Supp.2d 693, 722 (D. Md. 2013) (finding ongoing animus where employer failed to separate plaintiff from her harasser and issued poor performance reviews); *Elder v. DRS Techs., Inc.*, No. 1:13CV799 JCC/TRJ, 2013 WL 4538777, at *7 (E.D. Va. Aug. 27, 2013) (finding ongoing animus where employer deployed civilian employee to life-threatening active combat site in Afghanistan).

*Reardon*, 201 F. Supp. 3d at 785.

Here, Plaintiff alleges that during the 17 weeks and 2 days between the time

he reported this conduct and the time of his termination, ABCCM "attempted to

terminate his employment" on two occasions. (Doc. 1 ¶ 113.) On the first occasion,

an ABCCM employee advised him he was nearing the end of his 1,000-hour work

program. (*Id.* ¶ 114.) When Plaintiff corrected the accounting, however, he was

allowed to continue his employment. (*Id.* ¶ 115.) On a second occasion, he was told

he was at the end of his 1,000-hour work program and removed from the schedule.

(*Id.* ¶ 116.) Again, he corrected the accounting and was allowed to continue his

employment. (*Id.* ¶ 117.) Notably, when Plaintiff alleges he was terminated, he

does not allege he had any hours left in the work program at that time.

On both occasions, Plaintiff was able to resolve the issue and continue his employment.  Further, Plaintiff does not plead facts of any consistent and ongoing harassment.  This conduct does not rise to the level of animus outlined in *Reardon*, which would fill the temporal, causal gap between his alleged protective activity and his termination.  Accordingly, because Plaintiff has not plead facts sufficient to show a causal relationship between his protected activity and his termination, his claim fails as a matter of law.

ii. Plaintiffs' common law wrongful discharge claims based on the violation of the FLSA are not actionable under North Carolina law.

North Carolina is an employment "at will" state, meaning that employees can be fired at any time and for any reason, or even no reason, by an employer.  *Coman v. Thomas Mfg. Co.,* 325 N.C. 172, 175, 381 S.E.2d 445, 446 (1989). This being said, the North Carolina Supreme Court does recognize a narrow exception for wrongful termination claims which violate North Carolina public policy.  *Id.* at 175, 381 S.E.2d at 447.  This kind of claim, however, does not apply to the alleged violation of federal law or public policy. *Hadley v. Duke Energy Progress, LLC*, 677 Fed. Appx. 859, 862 (4th Cir. 2017) ("To prevail on a claim of wrongful discharge in violation of North Carolina public policy, a plaintiff must identify and rely on a specific North Carolina statute or constitutional provision and may not rely solely

on a federal law.") (citations omitted); *Leach v. N. Telecom, Inc.*, 141 F.R.D. 420,426 (E.D.N.C.1991); *Santifort v. Guy*, 4:14-CV-225-F, 2015 WL 5242922, at *9 (E.D.N.C. Sept. 8, 2015) (finding no North Carolina case that has allowed a wrongful discharge claim based federal public policy).

Accordingly, to the extent Plaintiff claims he was wrongfully terminated for participation in activities protected by the FLSA, he fails to state a claim for wrongful termination under North Carolina common law.

### iii.  Plaintiff fails to state a claim under REDA.

Before an employee may bring an action under REDA, he must first file a written complaint with the North Carolina Commissioner of Labor (the "Commissioner") within 180 days of the alleged violation. N.C.G.S. § 95-242. The Commissioner will either attempt to resolve the matter through informal means or issue a right-to-sue letter. *Id.* An employee may not commence an action under REDA without first obtaining this right-to-sue letter. N.C.G.S. § 95-243 (e). Because Plaintiff has failed to comply with the administrative remedies outlined in N.C.G.S. § 95-242, any claim he has under N.C.G.S. § 95-241 fails as a matter of law.

### iv.  Plaintiffs' common law wrongful discharge claims based on the violation of REDA are not actionable.

Where a plaintiff's common law wrongful discharge claims are based on the violation of REDA, those claims rise and fall with the viability of the REDA claim. *Smith v. Computer Task Grp., Inc.*, 568 F. Supp. 2d 603, 620 (M.D.N.C. 2008). Where, as here, no REDA liability exists, then wrongful discharge claims must fail as a matter of law. *Id.*

Even if Plaintiff could make claims under REDA, REDA only protects employees from reprisal for making complaints with respect to specific, enumerated kinds of violations. The only applicable provision here would be N.C.G.S. § 95-241(a)(1)(b), which is the reprisal for making complaints under the North Carolina Wage and Hour Act ("NCWHA").

To the extent the Court finds Plaintiff's claim is covered under the FLSA, however, the NCWHA would not apply to ABCCM. N.C.G.S. § 95-25.14(a)(1); *Bonham v. Wolf Creek Acad.*, 767 F. Supp. 2d 558, 565 (W.D.N.C. 2011) ("As a matter of state law, the NCWHA has by the language of the statute no application where the FLSA governs the employer-employee relationship.")

## IV. PLAINTIFF HAS FAILED TO STATE CLAIMS FOR DURESS, UNDUE INFLUENCE, AND ILLEGAL CONTRACT.

Duress, illegality, and undue influence are affirmative defenses. N.C. R. Civ. P. 8 (c); *see also* Fed. R. Civ. P. (c)(1) (duress and illegality listed among affirmative defenses which must be pled); *Booker v. Everhart*, 33 N.C. App. 1, 14, 234 S.E.2d 46, 56 (1977), *rev'd on other grounds*, 294 N.C. 146, 240 S.E.2d 360 (1978) (undue

influence and duress are affirmative defenses). As such, these defenses are not proper causes of action.

In the past, the court has treated "claims" for duress as claims for rescission of contract based on duress. *See Anderson v. U.S. Life Ins. Co.*, No. 3:13-CV-00489-MOC, 2014 WL 4987207, at *7 (W.D.N.C. Oct. 7, 2014), *citing Hinson v. United Fin. Servs., Inc.*, 123 N.C. App. 469, 472, 473 S.E.2d 382, 385 (1996). Because the defense of undue influence has a close relationship with duress, ABCCM is left to presume Plaintiff's claim of "undue influence" will also be treated as a claim for rescission. *Matter of Estate of Phillips*, 795 S.E.2d 273, 283 (N.C. Ct. App. 2016) (duress described as an extreme form of undue influence). Finally, because the defense of illegality is normally used to render a contract invalid, void, or unenforceable, ABCCM is similarly left to presume this claim is also one for rescission. *RCDI Const., Inc. v. Spaceplan/Architecture, Planning & Interiors, P.A.,* 148 F. Supp. 2d 607, 615 (W.D.N.C. 2001), *aff'd sub nom. RCDI Const., Inc. v. Space/Architecture Planning & Interiors, P.A.*, 29 Fed. Appx. 120 (4th Cir. 2002).

Giving Plaintiff the benefit of this clarification, he still fails to state claim sounding in contract. One of the basic elements of a contract claim is the "*mutual assent* of both parties to the *terms of the agreement* so as to establish a meeting of the minds." *Connor v. Harless*, 176 N.C. App. 402, 405, 626 S.E.2d 755, 757 (2006) (citations omitted, emphasis in the original). Here, while Plaintiff appears to claim

that he had numerous contracts with ABCCM, he goes on to claim that the terms of those contracts have never been disclosed to him. (Doc. 1 ¶ 141;143; 144-45.) Accordingly, it appears that Plaintiff is claiming that there was no contract between him and ABCCM because there was no "meeting of the minds."

Even if there were a contract, Plaintiff's "claims" of "duress," "undue influence," and "illegality" are, properly understood, claims for rescission of the contract. Rescission is an equitable remedy which, if successful, results in an erasure of the contract. *Fernandez Cmty. Ctr., LLC v. Toshiba Bus. Sols. (USA), Inc.*, No. 5:14-CV-692-F, 2015 WL 5054463, at *2 (E.D.N.C. Aug. 26, 2015) ("That is, a rescission 'seeks to create a situation the same as if no contract ever had existed.'" (quoting *Brannock v. Fletcher,* 271 N.C. 65, 74, 155 S.E.2d 532, 542 (1967))).

If, as Plaintiff alleges, there were multiple contracts, he does not identify which he feels should be rescinded. Presuming he seeks to rescind *every* contract he had with ABCCM, it is impossible to imagine which of Plaintiff's problems the remedy of rescission would solve. Limiting consideration to the Complaint, a rescission of the contract(s) Plaintiff had with ABCCM would result in his being ejected from the program. This remedy, however, does not appear to be the one Plaintiff is seeking. (Doc. 4, **Plf.'s Mot. for Injunctive Relief**) (requesting the Court enjoin ABCCM from expelling him from its program.) Even if the Court were to go outside the pleadings and consider the current reality - that Plaintiff has completed

ABCCM's program *see* (Doc. 23., at 5-6, **Mem. of Decision and Order 9/1/17**), a rescission of any or all alleged contract Plaintiff had with ABCCM would have no real-world effect.

Plaintiff's claims for duress, illegality, and undue influence fail to state actual claims. Even if the Court were to treat these as claims for rescission, Plaintiff has failed to plead the most basic elements for the existence of a contract. Getting past those problems, Plaintiff still fails to state a claim sounding in contract due to lack of damages.

## V. PLAINTIFF HAS FAILED TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

To prevail on a claim for emotional distress, Plaintiff must plead and prove that (1) ABCCM "engaged extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress." *Holleman v. Aiken*, 193 N.C.App. 484, 668 S.E.2d 579 (2008).

      i. <u>Plaintiff's Claim Does Not Allege Extreme and Outrageous Conduct Under North Carolina Law</u>

As stated by this Court, the initial inquiry is whether the alleged conduct is "extreme and outrageous." *Bonham v. Wolf Creek Acad.,* 767 F. Supp. 2d 558, 572 (W.D.N.C. 2011). This is a question of law for the Court. *Id.* (citations omitted). Under North Carolina law,

> Liability has only been found where the conduct has been
> so outrageous in character, and so extreme in degree, as to
> go beyond all possible bounds of decency, and to be
> regarded as atrocious, and utterly intolerable in a civilized
> community. The liability does not extend to mere insults,
> indignities, threats, annoyances, petty oppressions, or
> other trivialities.... [P]laintiffs must necessarily be
> expected and required to be hardened to a certain amount
> of rough language, and to occasional acts that are
> definitely inconsiderate and unkind.

*Id.; citing Briggs v. Rosenthal,* 73 N.C.App. 672, 327 S.E.2d 308 (1985) (*quoting* The Restatement of Torts). Where a plaintiff's complaint fails to allege facts sufficient to set forth extreme and outrageous conduct, the IIED claim is subject to dismissal pursuant to Rule 12(b)(6). *Id.* (citations omitted).

In the context of employment claims, "North Carolina courts have been particularly hesitant in finding intentional infliction of emotional distress claims actionable..."[1] *Jackson v. Blue Dolphin Commc'ns of N. Carolina, L.L.C.,* 226 F. Supp. 2d 785, 794 (W.D.N.C. 2002) (not "extreme and outrageous conduct" where defendant allegedly asked employee plaintiff to sign a false affidavit, made racially discriminatory statement to her, and then dismissed her in violation of North Carolina public policy and federal law), *citing Haburjak v. Prudential–Bache Sec. Inc.,* 759 F.Supp. 293, 302–03 (W.D.N.C.1991) (not "extreme and outrageous

---

[1] While ABCCM denies it had an employer-employee relationship with Plaintiff, it entertains Plaintiff's allegation that such a relationship existed here for the sake of argument.

conduct" where defendant allegedly terminated plaintiff for defendant's "own financial benefit and to [plaintiff's] financial ruin."); *Efird v. Riley*, 342 F. Supp. 2d 413, 427 (M.D.N.C. 2004) (not "extreme and outrageous conduct" where defendant allegedly serially sexually harassed plaintiff and then terminated her in retaliation for making complaints); *Pardasani v. Rack Room Shoes Inc.,* 912 F. Supp. 187, 189 (M.D.N.C. 1996) (not "extreme and outrageous conduct" where defendant allegedly discriminated against plaintiff because of his age and terminated him in retaliation for making complaints in violation of federal law); *Lorbacher v. Hous. Auth. of City of Raleigh*, 127 N.C. App. 663, 676, 493 S.E.2d 74, 82 (1997) (not "extreme and outrageous conduct" where defendant allegedly terminated plaintiff from housing authority because testified during a deposition about a housing authority's negligent operations which resulted in the death of two residents), *overturned on other grounds in McAllister v. Ha,* 347 N.C. 638, 645, 496 S.E.2d 577, 583 (1998); *Wagoner v. Elkin City Sch.'s Bd. of Educ.,* 113 N.C. App. 579, 586, 440 S.E.2d 119, 124 (1994) (not "extreme and outrageous conduct" where, among various other acts of alleged harassment, defendant assigned plaintiff to after school and Saturday work hours).

Here, Plaintiff alleges ABCCM intentionally inflicted emotional distress by 1) asking him to work longer hours than expected (Doc. 1 ¶ 157-58), 2) structuring his work to the benefit of ABCCM and to the detriment of Plaintiff (*id.* ¶ 159), 3)

harassing Plaintiff for opposing ABCCM (*id.* 160-61), and 4) attempting to manufacture a false pretext to terminate Plaintiff (*id.* 162). Plaintiff's claims here are a variation on the themes outlined in the cases above, where employees claimed they had been harassed, intimidated, mistreated, threatened, used to the benefit of an employer but to their detriment, and terminated on pretextual grounds in violation of state or federal law. Of course, ABCCM denies it engaged in any of this conduct. Even if it did, however, none of these alleged actions would rise to the level of "extreme and outrageous conduct" necessary to support a claim for negligent infliction of emotional distress under North Carolina law.

Further, this Court has already determined that Plaintiff's removal from the ABCCM program was lawful and consistent with the expectations of the parties.[2] (Doc. 23, at 5-6.) In fact, as this Court found, the failure to remove Plaintiff from the program would likely result in harm ABCCM as well as the various other homeless veterans who are on the waiting list to participate in ABCCM's program. (*Id.* at 6.) Accordingly, to the extent Plaintiff's intentional infliction of emotional distress claim was based on his imminent removal from the program, it fails because lawful conduct ordained by the Court cannot, by definition, be considered

---

[2]"Taking notice of the record in this case and the underlying litigation does not convert the Defendant's motion into one for summary judgment." *French v. Chosin Few, Inc.,* 173 F. Supp. 2d 451, 457 (W.D.N.C. 2001), *aff'd sub nom. French v. The Chosin Few, Inc.,* 60 Fed. Appx. 942 (4th Cir. 2003).

"…beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bonham,* 767 F. Supp. 2d 558, 572.

>    ii. <u>Plaintiff Does Not Allege Damages Sufficiently Severe or Distinct from His Alleged Baseline</u>

Finally, Plaintiff has failed to sufficiently plead the damages element. More specifically, in the context of an intentional infliction of emotional distress claim, "emotional distress" means,

> …any emotional or mental disorder, such as for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so…Additionally, mere temporary fright, disappointment or regret will not suffice…complete emotional tranquility is seldom attainable in this world.... *The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.*

*Swaim v. Westchester Acad., Inc.,* 170 F. Supp. 2d 580, 585 (M.D.N.C. 2001) (citations and internal quotation marks omitted, emphasis in the original.)

Mere allegations of emotional distress will not suffice. *Piro v. McKeever*, 245 N.C. App. 412, 419-20, 782 S.E.2d 367, 372-73 (2016), *aff'd*, 369 N.C. 291, 794 S.E.2d 501 (2016) (allegations of "mental anguish, depression, stress, embarrassment, humiliation, concern for his sons, substantial monetary expenses" were insufficient to survive a motion to dismiss without supporting factual allegations); *Pardasani v. Rack Room Shoes Inc.,* 912 F. Supp. 187, 192 (M.D.N.C.

1996) (allegations of "physical distress and the need for medical attention" insufficient to survive motion to dismiss); *Kimes v. Lab. Corp. of Am., Inc.,* 313 F. Supp. 2d 555, 568 (M.D.N.C. 2004) (mere allegations, with nothing more, of fear, frustration, and sleep deprivation insufficient to support negligent infliction of emotional distress claim); *Swaim v. Westchester Acad., Inc.,* 170 F. Supp. 2d 580, 585 (M.D.N.C. 2001) (Allegations of "mental anguish and pain and suffering" are insufficient, even where plaintiff has pled he was wrongfully terminated without warning. "Presumably, any termination [from employment] will cause the discharged employee some degree of emotional upset.")

Further, the North Carolina court has refused to recognize a claim for intentional infliction of emotional distress where it cannot distinguish the distress related to plaintiff's current claim from the distress related to plaintiff's other life stressors. *Waddle v. Sparks*, 331 N.C. 73, 85, 414 S.E.2d 22, 28 (1992) (although plaintiff did require medical treatment for emotional distress, treatment was sporadic and indistinguishable from the other stressors in her life).

Here, with regard to emotional distress damages, Plaintiff has simply alleged "Plaintiff has been deprived of his livelihood, subject to great humiliation, and emotional stress, mental anguish, and [been] subjected to other damages." (Doc. 1 ¶ 166.) First, there are no factual allegations to support these conclusory statements. At most, Plaintiff has alleged that he was placed in fear of being terminated from his

Case 1:17-cv-00150-MR-DSC   Document 50   Filed 07/02/18   Page 17 of 25

position at ABCCM, and thus "deprived of his livelihood." The kind of distress that comes from fear of losing one's job, however, is not sufficiently severe to support a negligent infliction of emotional distress claim. *Swaim*, at 170 F. Supp. 2d. at 585. Next, Plaintiff has failed to allege that he now suffers from any kind of diagnosable, enduring, and disabling medical condition as a result of ABCCM's alleged tortious conduct. Plaintiff's conclusory allegations, that has suffered humiliation, emotional stress, and mental anguish, are not sufficient to survive a motion to dismiss an intentional infliction of emotional distress claim. *Piro*, 245 N.C. App. at 419-20, 782 S.E.2d at 372-73; *Pardasani*, 912 F. Supp. at 192.

Finally, Plaintiff has not distinguished the emotional distress he claims here from the rest of his life stressors. As Plaintiff states, when he arrived at ABCCM, he was "homeless, without income, without a vehicle, without employment, and Plaintiff was psychologically fragile, and without the basic necessities and means to support himself." (Doc. 1 ¶ 133.) Plaintiff does not, however, plead any facts to explain how ABCCM's conduct worsened this baseline psychological or emotional state. Accordingly, Plaintiff has failed to plead facts sufficient to support the damages element of his claim for intentional infliction of emotional distress. *Waddle*, 331 N.C. at 85, 414 S.E.2d at 28.

Because Plaintiff has failed to plead facts sufficient to show "extreme and outrageous conduct," and failed to plead facts sufficient to show emotional distress

damages which are sufficiently severe or distinct from his baseline life stressors, his claim for intentional infliction of emotional distress should be dismissed.

## VI. PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER 42 U.S.C. § 1983.

To the extent Plaintiff's Section 1983 claims seek to enforce his rights under the FLSA, they are preempted by the FLSA. *Kendall v. City of Chesapeake, Va.,* 174 F.3d 437, 443 (4th Cir. 1999).

To the extent Plaintiff's Section 1983 claims are more expansive than his FLSA claims, he still fails to state a claim under Section 1983. Section 1983 actions only arise when persons are acting under the color of *state* rather than *federal* law. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998), *citing Wheeldin v. Wheeler,* 373 U.S. 647 (1963).

Here, Plaintiff's Section 1983 claim fails because he has alleged that ABCCM was acting under color of federal, rather than state authority. (Doc. 1 ¶ 168) ("Acting under color of U.S. Department of Veterans Affairs and U.S. Department of Labor contracts the Defendant used said authority to engage in colorable actions to violate the Plaintiff's Constitutional Rights.")[3]

---

[3] To the extent the Court is inclined to interpret this claim under *Bivens v. Six Unknown Agents,* 403 U.S. 388 (1971), Plaintiff's claim would nevertheless fail. *Bivens* claims are limited to redress conduct by federal officers, and the Supreme Court has specifically declined to extend the cause of action to private entities. *Correctional Services Corp. v. Malesko,* 534 U.S. 61, 66 (2001) (refusing to allow

Further, the color of law requirement "excludes from its reach merely private conduct, no matter how discriminatory or wrongful," unless the state "so dominat[es]" the private activity as to "convert it to state action." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 181 (4th Cir. 2009). "Mere approval of or acquiescence in the initiatives of a private party" is insufficient to show the requisite level of state dominance. *Id.*

In an effort to establish the color of law element, Plaintiff alleges ABCCM sought to violate his Constitutional rights acting "under the color of U.S. Department of Veteran Affairs and U.S. Department of Labor contracts…." (Doc. 1 ¶ 168.) Setting aside the conclusory nature of this allegation, the Supreme Court has held "Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell-Baker v. Kohn,* 457 U.S. 830, 840 (1982). Plaintiff has otherwise failed to plead any facts which show any level of governmental involvement into, much less dominance of, the activities of ABCCM at issue.

## VII.   PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER 42 U.S.C. § 1985.

---

a *Bivens* claim against a halfway house operated by private entity under contract with the Bureau of Prisons).

To the extent Plaintiff's Section 1985 claims are to vindicate his claimed rights under the FLSA, they are preempted by his FLSA claims. *Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364, 1369 (4th Cir. 1989).

To the extent the Court reads his Section 1985 claims more broadly, Plaintiff still fails to state a claim. A claim under 42 U.S.C. § 1985 requires a plaintiff to show,

> 1) a conspiracy of two or more persons, 2) who are motivated by a specific class-based, invidiously discriminatory animus to 3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, 4) and which results in injury to the plaintiff as 5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Thomas*, 841 F.3d at 637 (citations omitted).

    i. Plaintiff has failed to plead a conspiracy with "two or more persons."

In the context of a Section 1985 action, a corporation cannot conspire with itself. *Buschi v. Kirven*, 775 F.2d 1240, 1251 (4th Cir. 1985) (applying intracorporate conspiracy doctrine to Section 1985 action). Rather, Plaintiff must show that a conspiracy occurred between ABCCM and a third party.

Plaintiff's complaint never mentions any coordination or even parallel action with any other entity. At best, Plaintiff uses the term "conspiracy" in conclusory terms by alleging ABCCM "conspired to deprive the Plaintiff of his lawful

compensation and rights" (Doc. 1 ¶ 66); "conspired to deprive the Plaintiff as Front Desk Manager employee of his lawful compensation" (*id.* ¶ 99); "conspired to deprive the Plaintiff of his lawful compensation, employment, benefit, and rights" (*id.* ¶ 171); "conspired, retaliated, and terminated the Plaintiff's employment for pursuing his protected tight to speak to a government official and his liberty interests in his employment in violation of the First Amendment and the Fourteenth Amendment" (*id.* ¶ 173). Not only does Plaintiff fail to plead facts sufficient to support these conclusory allegations, Plaintiff never states with whom ABCCM allegedly conspired. "Allegations of parallel conduct and a bare assertion of conspiracy are not enough for a claim to proceed." *Thomas*, 841 F.3d at 637 (internal quotations and citations omitted). *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011) (sustaining motion to dismiss Section 1985 claim where plaintiffs failed to "allege with any specificity the persons who agreed to the alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any such communications were made.")

ii. <u>Plaintiff has failed to plead "specific class-based, invidiously discriminatory animus."</u>

To meet the requirement of a "class-based discriminatory animus," a plaintiff must show his class possesses "discrete, insular and immutable characteristics comparable to those characterizing classes such as race, national origin and sex."

*Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985). Courts has specifically rejected that Section 1985 protections would apply to classes of people such as whistleblowers (*id.* 775 F.2 at 1258), indigents (*Glover v. Tower*, 700 F.2d 556, 558 (9th Cir. 1983), *aff'd and remanded,* 467 U.S. 914 (1984)), and the disabled (*Wilhelm v. Cont'l Title Co.*, 720 F.2d 1173, 1176 (10th Cir. 1983)).

Here, Plaintiff does not allege that ABCCM's actions were motivated by an animus to any particular class, much less a protected class to which he belongs. While Plaintiff's Complaint does variously identify him as an indigent, an alleged whistleblower, and potentially as disabled, none of these are classes which are protected by Section 1985. Accordingly, Plaintiff's claims under Section 1985 should be dismissed as a matter of law.

## CONCLUSION

For the reasons set forth above, ABCCM respectfully requests that the Court dismiss Plaintiff's claims.

This 2nd day of July, 2018.

s/Dale Curriden
STEPHEN B. WILLIAMSON (NC Bar #20203)
DALE CURRIDEN (NC Bar # 24196)
VAN WINKLE, BUCK, WALL, STARNES
AND DAVIS, P.A.
P.O. Box 7376
Asheville, NC 28802-7376
Telephone: 828-258-2991
Fax: 828-257-2767
swilliamson@vwlawfirm.com
dcurriden@vwlawfirm.com

23

Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

I certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification to Plaintiff. Although Plaintiff has requested electronic notification, LCvR 5.3(B) requires that I serve the foregoing on Plaintiff by the conventional methods listed in Rule 5 of the Rules of Civil Procedure. Accordingly, I have also served a copy of the foregoing on Plaintiff by depositing same in a post-paid, properly addressed wrapper in a post office or official depository under the exclusive care and custody of the United States Postal Service and addressed as follows:

> Gregory G. Armento
> 408 Depot Street, Apt. 302
> Asheville, NC 28801
> *Pro Se Plaintiff*

This 2nd day of July, 2018.

*s/Dale Curriden*         
Dale Curriden
