# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:17-cv-00150-MR-DLH

| | |
|---|---|
| GREGORY ARMENTO, ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | MEMORANDUM OF DECISION AND ORDER |
| ASHEVILLE BUNCOMBE ) COMMUNITY CHRISTIAN ) MINISTRY, INC., ) ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** comes before the Court on Defendant's Motion for Partial Summary Judgment [Doc. 46], Defendant's Motion to Dismiss [Doc. 49], and the parties' supplemental briefing pursuant to the Court's October 9, 2018 *sua sponte* Order [Doc. 62] on the issue of "whether the Defendant is 'an enterprise engaged in commerce' within the meaning of § 203(s) of the FLSA." [Docs. 63, 64].

## I.    INTRODUCTION

On June 12, 2017, the Plaintiff filed this action *pro se*, alleging failure to pay minimum wage and overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206 and 207, and the North Carolina Wage and

Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.3 and 95-25.4; record-keeping violations under 29 U.S.C. § 211(c) and N.C. Gen. Stat. § 95-25.13; misclassification of employees under 29 C.F.R. Part 541; retaliation and wrongful termination in violation of 29 U.S.C. §§ 215 and 218c and the North Carolina Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. § 95-241; claims under 42 U.S.C. §§ 1983 and 1985; and claims for "duress, undue influence, and illegal contracts" and intentional infliction of emotional distress. [Doc. 1]. The Plaintiff sought and was granted leave to proceed *in forma pauperis* in this action. [Docs. 2, 7]. On the same day as filing the Complaint, the Plaintiff also filed a 59-page "Plaintiff's Affidavit in Support of Complaint," together with 171 pages of exhibits thereto [Doc. 3], and a Motion for Injunctive Relief under 29 U.S.C. § 217 [Doc. 4]. The Court denied this motion for the reasons stated in its Order thereon. [Doc. 23].

On July 7, 2018, the Defendant filed a motion to dismiss all of Plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure and a partial motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, seeking dismissal of the Plaintiff's FLSA, NCWHA, and REDA claims. [Docs. 46, 49].

The matters before the Court have been fully briefed and are ripe for adjudication.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6), the Court is guided by the Supreme Court's instructions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007), and Ashcraft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009).  As the Fourth Circuit has noted, "those decisions require that complaints in civil actions be alleged with greater specificity than previously was required."  Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012).

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face."  Iqbal, 556 U.S. at 678, 129 S.Ct at 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct 1955).  To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949.

In reviewing the complaint, the Court must accept the truthfulness of all factual allegations but is not required to assume the truth of "bare legal conclusions."  Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011).  "The mere recital of elements of a cause of action, supported only by conclusory

statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." Walters, 684 F.3d at 439.

To survive a Rule 12(b)(6) motion, "a complaint must state a 'plausible claim for relief.'" Id. (quoting Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949). Determining whether a complaint states a plausible claim for relief is "a context-specific task," Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009), which requires the Court to assess whether the factual allegations of the complaint are sufficient "to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, 127 S.Ct. 1955. As the Fourth Circuit has explained:

> To satisfy this standard, a plaintiff need not forecast evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements. Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is probable, the complaint must advance the plaintiff's claim across the line from conceivable to plausible.

Walters, 684 F.3d at 439 (citations and internal quotation marks omitted).

## B.    Summary Judgment

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "As the Supreme Court has observed,

4

this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" <u>Bouchat v. Baltimore Ravens Football Club, Inc.</u>, 346 F.3d 514, 519 (4th Cir. 2003) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986)) (emphasis in original)).

A genuine issue of fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. <u>Shaw v. Stroud</u>, 13 F.3d 791, 798 (4th Cir. 1994), <u>cert. denied</u>, 513 U.S. 814, 115 S.Ct. 68 (1994). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." <u>Bouchat</u>, 346 F.3d at 522. If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. <u>Id.</u>

> A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. Furthermore, neither unsupported speculation, nor evidence that is merely colorable or not significantly probative, will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that reasonable minds could differ on a material point, then, regardless of any proof or evidentiary

> requirements imposed by the substantive law, summary judgment, if appropriate, shall be entered.

Id. (internal citations and quotation marks omitted). Nonetheless, in considering the facts for the purposes of a summary judgment motion, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S.Ct. 1348 (1986).

## III.    FACTUAL BACKGROUND[1]

The Plaintiff formerly resided at the Veterans Restoration Quarters ("VRQ"), a homeless shelter for veterans owned and operated by Defendant. [Doc. 1 at ¶ 17]. Defendant is a non-profit organization that is supported by 284 churches throughout Western North Carolina and provides services to individuals in need, including veterans. [Doc. 47 at ¶¶ 3-4]. Plaintiff arrived at the VRQ on September 2, 2015. [Doc. 1 at ¶ 38]. As a condition of residing at the VRQ, the Plaintiff was required to work a number of "service hours" necessary to the daily operation of the facility. [Id. at ¶ 23]. The Plaintiff began performing his service hours on or about September 4, 2015. [Id. at ¶ 42]. Plaintiff's service hours were completed primarily in his capacity

---

[1] For ease of reference, the Court presents the relevant facts as gleaned from the record as a whole. The Court notes that it considered only the allegations of the Complaint and evidence of record as appropriate for its determinations of Defendant's motion to dismiss and motion for partial summary judgment, respectively.

as a Duty Driver and as the Front Desk Manager of the VRQ. [Doc. 47 at ¶¶ 14, 18; see Doc. 1 at ¶ 50]. The parties dispute how many service hours the Plaintiff performed and for how long he performed them. [See Docs. 1 at ¶¶ 55, 61; 3 at ¶ 39; 47 at ¶ 18, 23-25].

In addition, the Plaintiff was employed for pay on a part-time basis by Defendant as a Front Desk Manager beginning on or about September 8, 2015. [Doc. 1 at ¶¶ 69-70]. Plaintiff's employment for pay as a Front Desk Manager was through Defendant's "1,000-hour program,"[2] which is designed to help transition homeless veterans to meaningful employment in the community by providing them with job skills and the opportunity to earn money. [Docs. 47 at ¶¶ 15, 17; 55-7 at 6]. The 1,000-hour program allows a veteran to be paid for up to 1,000 hours of work for the VRQ. [Docs. 47 at ¶ 16; 55-7 at 19]. Many residents do not finish the 1,000-hour program because they find full-time employment with employers outside the VRQ. [Doc. 47 at ¶ 16]. The Plaintiff completed his 1,000 work hours on or about June 1, 2016. [Docs. 1 at ¶¶ 118-119; 47 at ¶ 17]. At that time, Plaintiff was discharged from his employment as the VRQ's Front Desk Manager. [Doc. 1 at ¶ 119].

---

[2] The 1,000-hour program is also referred to in the record as the "Transitional Employment Program ("TEP")" and the "temporary employment program." [See Doc. 47].

The Plaintiff now alleges that he is entitled to unpaid wages and overtime compensation as a result of work performed both as "service hours" and in his capacity as a part-time employee as a Front Desk Manager. [Doc. 1 at ¶¶ 61, 67, 96, 100]. Beginning on or about November 11, 2015, only two months after beginning his service hours and paid work at the VRQ, the Plaintiff began making complaints regarding his alleged unpaid wages. [Doc. 1 at ¶ 103]. On November 11, 2015, the Plaintiff complained to the staff at the VRQ. [Id.]. On November 12, 2015, the Plaintiff went to the U.S. Department of Labor office in Asheville, North Carolina, to lodge his complaints. Plaintiff also went to Defendant's primary office, also in Asheville, and met with various managers and directors of Defendant "to discuss unpaid wages and Service Hours." [Doc. 1 at ¶¶ 104-5]. On January 1, 2016, Plaintiff began sending a 17-page statement that he had prepared entitled "ABCCM Wage Hour and Service Hour Representations" (the "Statement") to various government agencies, civil rights groups, U.S. Senators, and local attorneys. These groups included the U.S. Department of Veterans Affairs, the U.S. Department of Labor, the N.C. Department of Labor, the N.C. Justice Center, the Elizabeth Dole Foundation, and the Southern Poverty Law Center. The Statement related to Plaintiff's claims for unpaid wages and service hours, and the Plaintiff attached many documents

in support of his claims. [Docs. 1-12; 1-14]. On February 1, 2016, Plaintiff sent an e-mail to U.S. Senator Thom Tillis attaching the Statement and the supporting documents seeking Senator Tillis' help in compelling "the prevailing Departments to assume their responsibility of advocacy for myself and the resident veterans at the Veterans Restoration Quarters." [Doc. 1-10].

On or about April 18, 2016, Randy Gamble, the VRQ Front Desk Supervisor, advised Plaintiff that he was nearing completion of his 1,000 work hours and that he would soon be removed from the payroll. [Doc. 1 at ¶¶ 114]. In response, Plaintiff showed Defendant documentation that his total paid work hours were, in reality, around 727. Plaintiff continued his employment. [Id. at ¶ 115]. Then, on or about April 28, 2016, Defendant told Plaintiff that he had completed his 1,000 work hours. [Id. at ¶ 116]. In response, Plaintiff showed Defendant documentation reflecting that he had worked only 799 total paid hours. Plaintiff again continued his employment. [Id. at ¶ 117]. On June 1, 2016, after Plaintiff had completed 1,007 paid work hours [Doc. 47 at ¶ 13], Defendant advised Plaintiff that he had completed the 1,000-hour program and that he would no longer be employed as a Front Desk Manager. [Id. at ¶¶ 118-119].

On September 2, 2017, due to the two-year limit on a resident's participation in the program, Plaintiff became ineligible to continue living in the VRQ.  [Doc. 47 at ¶ 26].  At the end of Plaintiff's eligibility for the program, Defendant assisted Plaintiff in qualifying for another housing program available through the Veterans Administration.  [Doc. 47 at ¶ 27].

## IV.    ANALYSIS

### A.    Motion to Dismiss

Defendant moves to dismiss all of Plaintiff's claims under Rule 12(b)(6), arguing that "Plaintiff has failed to plead facts that state a claim for relief."  [Doc. 49].  The Court concludes that some, but not all, of Plaintiff's claims are subject to dismissal under Rule 12(b)(6).[3]

---

[3] Typically, in resolving a motion to dismiss for failure to state a claim, a district court cannot consider matters outside the pleadings without converting the motion into one for summary judgment.  A court may, however, consider a "written instrument" attached as an exhibit to a pleading, as well as documents attached to the motion to dismiss, so long as they are integral to the complaint and their authenticity is not in dispute.  Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013).  "There is no uniform rule among the circuits with respect to whether an affidavit attached as an exhibit to a pleading is a 'written instrument' such that it may be considered by a district court in resolving a Rule 12(b)(6) … motion."  Id.  The Fourth Circuit has not specifically addressed whether an affidavit submitted with a complaint can be properly considered on a motion to dismiss for failure to state a claim.  See id. at 117 ("We need not decide the propriety of considering an affidavit attached as an exhibit to a pleading in the instant appeal.").  Without guiding precedent, the Court declines to consider the Plaintiff's Affidavit and its exhibits in deciding Defendant's motion to dismiss because the ultimate viability of Plaintiff's claims does not turn on the evidence presented therein.

### 1.     Violations of Record-Keeping Provisions

There is no private right of action for violations of the record-keeping provisions under the FLSA or NCWHA.  With respect to the FLSA, the "authority to enforce the Act's record-keeping provisions is vested exclusively with the Secretary of Labor."  Barton v. Pantry, Inc., No. 1:04-cv-748, 2006 WL 1367421, at *3 (M.D.N.C. May 17, 2006) (Tilley, J.) (quoting Elwell v. Univ. Hosp. Home Care Serv., 276 F. 3d 832, 843 (6th Cir. 2002)). Namely, 29 U.S.C. § 217 authorizes the Secretary of Labor to initiate injunction proceedings to restrain any violation of 29 U.S.C. § 215, including 29 U.S.C. § 215(a)(5), which makes it unlawful for an employer to fail to comply with the record-keeping requirements of 29 U.S.C. § 211(c).  Id. (citing Elwell, 276 F.3d at 843).

Similarly, there is no private right of action under the NCWHA.  North Carolina General Statue 95-25.22 sets forth the rights of action afforded by the NCWHA.  These include the right of an employee to recover for wage and overtime violations under N.C. Gen. Stat. § 95-24.4 and under N.C. Gen. Stat. §§ 95.25.6 through 95.25.12. Section 95-25.22 does not include the record-keeping provisions found in § 95-25.15(b).  Further, § 95-25.23A provides that violations of the record-keeping provisions in § 95-25.15(b)

shall be prosecuted by the N.C. Commissioner of Labor or his authorized representative. N.C. Gen. Stat. § 95-25.23A.

As such, while the FLSA and the NCWHA make employers responsible for keeping accurate records of the wages and hours of all employees, it is plain from the language of these Acts that they do not provide a private right of action for Plaintiff to enforce record-keeping provisions against Defendant.

Because neither the FLSA or the NCWHA provide Plaintiff the right to request injunctive relief for alleged record-keeping violations, these claims will be dismissed.

### 2. "Duress, Undue Influence, and Illegal Contracts"

The Plaintiff alleges he was damaged as a result of the Defendant engaging in "a scheme constructed to take advantage of its superior position of authority and control over the homeless and weakened economic position of the Plaintiff." [Doc. 1 at ¶ 146]. Further, "[t]he Defendant coerced the Plaintiff into agreeing with unconscionable labor demands and contracts which Plaintiff would not have otherwise agreed, and did so by any means of economic pressure." [Id. at ¶ 147]. The Plaintiff labels the claims associated with the alleged conduct as "duress, undue influence, and illegal contracts." [Doc. 1, Count IV].

Duress, undue influence, and illegality are affirmative defenses, not claims for relief.  See N.C. Gen. Stat. § 1A-1, Rule 8(c); Fed.R.Civ.P. 8(c)(1). Some courts have treated claims for duress as claims for rescission of contract based on duress.  Anderson v. U.S. Life Ins. Co., No. 3:13-cv-00489-MOC, 2014 WL 4987207, at *7 (W.D.N.C. Oct. 7, 2014) (Cogburn, J.) (citing Hinson v. United Fin. Servs., Inc., 123 N.C. App. 469, 472 (1996)). Duress may be found where one, by the unlawful act of another, is induced to make a contract or perform or forego some act under circumstances that deprive him of the exercise of free will.  Id. (citing Stegall v. Stegall, 100 N.C. App. 398, 401 (1990)).  Rescission is an equitable remedy that puts the parties in the position they would have been in without the contract.  Morris v. Scenera Research, LLC, 368 N.C. 857, 867, 788 S.E.2d 154, 161 (2016). Here, even if there were an enforceable contract between the parties and even if Plaintiff had alleged conduct by Defendant that rose to the level of duress or undue influence, rescission would be ineffectual to afford the Plaintiff any actual remedy.  This same conclusion would also be reached if Plaintiff's "claim" for illegality were treated as a claim for rescission.  As such, Plaintiff's "claims" for duress, undue influence, and illegality will be dismissed.

### 3. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, Plaintiff must allege facts showing (1) extreme and outrageous conduct by Defendant, (2) which is intended to cause and does cause, (3) severe emotional distress. <u>Holleman v. Aiken</u>, 193 N.C. App. 484, 501, 668 S.E.2d 579, 590 (2008). "Conduct is extreme or outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Smith-Price v. Charter Behavioral Health Systems</u>, 164 N.C. App. 349, 354, 595 S.E.2d 778, 782 (2004). "Rarely will conduct in the employment context rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." <u>Wilson v. Southern Nat'l Bank of North Carolina</u>, 1996 WL 445088, at *5 (4th Cir. Aug. 8, 1996) (unpublished). Plaintiff has alleged no acts by Defendant which the Court can identify as extreme or outrageous or that this Court would conclude were intended to cause severe emotional distress.

Furthermore, Plaintiff has not made any specific allegations regarding the nature of any "severe emotional distress" he is alleged to have suffered. Severe emotional distress is "any emotional or mental disorder, such as for

example, neurosis, psychosis, chronic depression, phobia, or any type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Swaim v. Westchester Acadamy, Inc., 170 F.Supp.2d 580, 585 (M.D.N.C. 2001) (quoting Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 327 N.C. 283, 304, 395 S.E.2d 85, 97, reh'g denied, 327 N.C. 644, 399 S.E.2d 133 (1990)). The North Carolina Supreme Court has noted that "'[c]omplete emotional tranquility is seldom attainable in this world…. *The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.*'" Waddle v. Sparks, 331 N.C. 73, 84, 414 S.E.2d, 22, 27-28 (1992) (quoting Restatement (Second) of Torts § 46 cmt. j (1965)). Here, Plaintiff alleges only that, as a result of Defendant's alleged conduct, "Plaintiff has been deprived of his livelihood, subjected to great humiliation, and emotional stress, [and] mental anguish…." [Doc. 1 at ¶ 166]. Plaintiff makes no factual allegations regarding any specific severe and disabling emotional or mental condition which may be generally recognized and diagnosed by a professional trained to do so.

As such, Plaintiff's allegations of intentional infliction of emotional distress are insufficient as a matter of law, and this claim will be dismissed.

### 4.  Claims Under 42 U.S.C. §§ 1983 and 1985

#### a.  Section 1983.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[4]  <u>West v. Atkins</u>, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55 (1988).  Plaintiff here sought to satisfy the first element by alleging that Defendant violated his "right to speak to a government official and his liberty interests in his employment in violation of the First Amendment and the Fourteenth Amendment."  [Doc. 1, at ¶ 173].  For the sake of efficiency, and because the second element is determinative of this claim, the Court assumes without deciding that Plaintiff has identified a valid right secured by the Constitution.

For the second element, Plaintiff must show that the alleged deprivation was committed by a person acting under color of state law.  <u>West</u>, 487 U.S. at 48, 108 S.Ct. at 2254-55.  Here, the Plaintiff alleged that Defendant, "[a]cting under color of U.S. Department of Veterans Affairs and

---

[4] The Court notes that, to the extent Plaintiff's Section 1983 claim seeks to enforce rights under the FLSA, it is, as a preliminary matter, preempted by the FLSA.  <u>Kendall v. City of Chesapeake, Va.</u>, 174 F.3d 437, 443 (4th Cir. 1999) ("[W]e can only conclude that the mechanisms established by the FLSA preclude a § 1983 action to enforce FLSA rights.").

U.S. Department of Labor contracts the Defendant used said authority to engage in colorable actions to violate the Plaintiff's Constitutional Rights." [Doc. 1 at ¶ 168]. At best, Plaintiff has alleged Defendant violated Plaintiff's constitutional rights under the color of federal, not state, law. The Supreme Court has made clear that § 1983 does not apply to federal actors. <u>Dowe v. Total Action Against Poverty in Roanoke Valley</u>, 145 F.3d 653, 658 (4th Cir. 1998) (citing <u>Wheeldin v. Wheeler</u>, 373 U.S. 647, 650 n. 2, 83 S.Ct. 1441, 1445 (1963)). Plaintiff, therefore, has failed to allege sufficient state involvement to invoke § 1983.

As such, Plaintiff's claim under § 1983 is insufficient as a matter of law and will be dismissed.

### b. Section 1985

To bring a claim of civil conspiracy under § 1985, Plaintiff must show:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

<u>Thomas v. The Salvation Army Southern Territory</u>, 841 F.3d 632, 637 (4th Cir. 2016). Plaintiff's claim under § 1985 fails for two reasons. First, in the context of a § 1985 action, a corporation cannot conspire with itself. <u>Buschi</u>

v. Kirven, 775 F.2d 1240, 1251 (4th Cir. 1985).  Plaintiff's allegations of wrongdoing are limited only to Defendant, a single corporate entity.  [See Doc. 1 at ¶¶ 171, 173].  As such, Plaintiff has not plead a "conspiracy of two or more persons" and, therefore, does not satisfy the first element of a claim under § 1985.

Second, "[t]o meet the requirement of a class-based discriminatory animus, under [§ 1985] the class must possess the 'discrete, insular and immutable characteristics comparable to those characterizing classes such as race, national origin and sex.'" Buschi, 775 F.2d at 1257 (quoting Bellamy v. Mason's Stores, Inc., 368 F.Supp. 1025, 1028 (E.D.Va. 1973), aff'd, 508 F.2d 504 (4th Cir. 1974)).  Plaintiff does not allege any facts in support of this element [See Doc. 1 at ¶¶ 167-174] and there is nothing in the record from which facts supporting this element could be inferred.

Plaintiff's claim for violation of 42 U.S.C. § 1985, therefore, will also be dismissed.

### 5.    Retaliatory Discharge under the FLSA

The FLSA makes it unlawful to "discharge or in any other manner discriminate against any employee" because such employee has (1) "filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]," 29 U.S.C. § 215(a)(3), or (2) "provided … to the

employer [or] the Federal Government, … information relating to any violation of, or any act or omission the employee reasonably believes to be a violation of [the FLSA]." 29 U.S.C. § 218c(a). "A plaintiff asserting a *prima facie* claim of retaliation under the FLSA must show that (1) he engaged in an activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action." Darveau v. Detecon, Inc., 515 F.3d 334, 340 (4th Cir. 2008).

Here, Plaintiff fails to allege facts in support of his FLSA retaliation claim. Specifically, Plaintiff claims that Defendant twice attempted to prematurely terminate his employment in the 1000-hour program and each time Plaintiff presented Defendant with documentation showing that he had not completed the full 1000 hours. [Doc. 1 at ¶¶ 114-117]. In both instances, Plaintiff's employment continued. [Id. at ¶¶ 115, 117]. Then on June 1, 2016, Defendant again advised Plaintiff that he had completed the 1,000-hour program and that he would no longer be employed as a Front Desk Manager. [Id. at ¶¶ 118-119]. Regarding this occasion, however, Plaintiff does not allege any "adverse action" by Defendant, only that Plaintiff's employment naturally terminated upon completion of the 1000 work hours.

For these reasons, the Court concludes that the Plaintiff's claim for retaliation under the FLSA must be dismissed.

### 6. Retaliatory Discharge Under the REDA

The REDA prohibits an employer from taking retaliatory action against an employee when the employee files or makes a claim or complaint in relation to the employer's alleged violation of the NCWHA. N.C. Gen. Stat. § 95-241(a). As with his retaliatory discharge claim under the FLSA, Plaintiff contends he was terminated by Defendant as a result of his e-mail complaint to U.S. Senator Tillis. Before an employee may bring an action under REDA, however, the employee must file a written complaint with the North Carolina Commissioner of Labor (the "Commissioner") within 180 days of the alleged violation. N.C. Gen. Stat. § 95-242(a). Within 20 days of the filing of the written complaint, the Commissioner begins an investigation of the alleged violation. Id. Within 90 days of the filing of the complaint, if he finds there is reasonable cause to believe the allegation is true, the Commissioner attempts resolution through certain informal methods provided by the statute. N.C. Gen. Stat. § 95-242(a). If the Commissioner is unable to resolve the alleged violation through these informal methods, the Commissioner is to either file a civil action on behalf of the employee or issue a right-to-sue letter

to the employee.  N.C. Gen. Stat. § 95.242(b).  Only after an employee has been issued a right-to-sue letter by the Commissioner may the employee file a civil action against the employer.  N.C.G.S. § 95-243(e).

Plaintiff does not allege (and the record does not reflect) that Plaintiff ever filed a complaint with the N.C. Commissioner of Labor or that he ever received a right-to-sue letter.  Further, the 180-day deadline to file such a complaint has long since expired.  As such, the Plaintiff is foreclosed from filing an action under REDA.

Further, even with a right-to-sue letter, REDA is not violated where the employer can prove "by the greater weight of the evidence that it would have taken the same unfavorable action in the absence of the protected activity of the employee."  N.C.G.S. § 95-241(b).  Therefore, even if Plaintiff had followed the statutory pre-requisites to filing this claim, no violation could be found because Plaintiff's allegations reflect this his employment would have ended regardless of any protected activity because he completed his 1,000 work hours under the 1,000-hour program.  See N.C. Gen. Stat. § 95-241(b).

For these reasons, the Court concludes that the Plaintiff's claim for retaliation under the REDA must be also dismissed.

The Court declines to address the Defendant's motion to dismiss as it relates to Plaintiff's claims for violation of the FLSA for failure to pay minimum wage and overtime. These are subjects of the Defendant's Motion for Partial Summary Judgment, and evidentiary forecasts have been presented on these claims. Therefore, they are disposed of on summary judgment rather than on the motion to dismiss.[5]

## B.    Summary Judgment

The Court now turns to the Plaintiff's remaining claims, which include violations of the FLSA and NCWHA for failure to pay minimum wage and overtime. The Court addresses whether genuine issues of material fact remain with respect to these claims.

### 1.    Minimum Wage and Overtime under the FLSA

To establish a violation of the minimum wage provision of the FLSA, Plaintiff must show that: (1) he was employed by Defendant; (2) Defendant was engaged in commerce or in the production of goods for commerce; (3) Plaintiff was not compensated for all hours worked during each workweek at a rate equal to or greater than the then-applicable minimum wage; and (4) none of the exemptions in 29 U.S.C. § 213 applied to Plaintiff's position(s).

---

[5] Defendant makes no argument for dismissal of Plaintiff's NCWHA claims in its brief on its motion to dismiss.

Khaer v. Al Kawthar International, No. 1:16-cv-00652-JCC-MSN, 2017 WL 1416867, at *3 (E.D.Va. Feb. 2, 2017) (citing 29 U.S.C. § 206).

To establish a violation of the overtime provisions of the FLSA, Plaintiff must show that: (1) he was employed by Defendant, (2) Defendant was engaged in commerce or in the production of goods for commerce, (3) he worked more than forty hours per workweek, (4) he was not compensated at a rate of 1.5 times Defendant's regular rate for each hour worked longer than forty hours for each workweek, and (5) none of the exemptions in 29 U.S.C. § 213 applied to Plaintiff's position(s). Id. (citing 29 U.S.C. § 207).

"An enterprise is 'engaged in commerce or in the production of goods for commerce' when it both has at least $500,000 in annual sales and 'has employees engaged in commerce or in the production of goods for commerce' or 'has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." Ergashov v. Global Dynamic Transportation, LLC, 680 Fed.Appx. 161, 162 (4th Cir. 2017) (unpublished decision) (quoting 29 U.S.C. § 203(s)(1)(A)(i)-(ii)).

"[E]ven a business engaged in purely intrastate activities can no longer claim exemption from FLSA coverage if the goods its employees handle have moved in interstate commerce. The language imposes no requirement

that the goods have personal involvement in interstate commerce when they are handled or sold. Instead [the FLSA] broadens coverage to include all employees within the stream of commerce of such goods, even if their own participation remains purely intrastate." Farrell, 342 F.Supp.2d at 438 (quoting Donovan v. Scoles, 652 F.2d 16 (9th Cir. 1981), cert. denied, 455 U.S. 920, 102 S.Ct. 1276 (1982)). For purpose of the FLSA, "goods" means any "wares, products, commodities, merchandise, or articles or subjects of commerce of any character…." 29 U.S.C. § 203(e)(4)(i). Further, "sale" includes the "consignment for sale." 29 U.S.C. § 203(e)(4)(k).

Here, the forecast of evidence suggests that Defendant's employees handled and sold goods that moved in interstate commerce. Namely, the Defendant's business includes the operation of a Warehouse, which receives, stores, and transports donated items, and a Thrift Store, which sells the donated items. [See Doc. 55-7 at 18]. Employees of the Warehouse and the Thrift Store handle donations and merchandise, respectively. [Id.]. Plaintiff, however, has neither alleged nor presented a forecast of evidence that these goods ever moved in interstate commerce. Moreover, the Plaintiff also failed to present a forecast of evidence that Defendant had at least $500,000 in annual sales. Of note, the record shows that Plaintiff requested and received Defendant's tax returns for the years 2015, 2016, and 2017.

[Doc. 56-5 at ¶ 29]. The Plaintiff, however, did not submit these tax returns in opposition to Defendant's motion for summary judgment. None of the other evidence submitted by Plaintiff creates a genuine issue of material fact on this element of Plaintiff's FLSA claim.

As such, the Plaintiff cannot withstand summary judgment of his claims for violation of the minimum wage and overtime provisions under the FLSA and these claims must be dismissed.

## 2.     Minimum Wage and Overtime under the NCWHA

Similar proof is required to establish minimum wage and overtime violations under the NCWHA. Under the NCWHA, however, there is no requirement that the defendant be engaged in commerce. See N.C. Gen. Stat. §§ 95-25.3, 95-25.4. Therefore, the failures in Plaintiff's forecast of evidence regarding the FLSA are not fatal to this claim.

The Court finds that there are genuine issues for trial related to Plaintiff's minimum wage and overtime claims under the NCWHA. For example, and not by way of limitation, there remain issues of fact relative to whether Plaintiff was compensated for all hours that he worked during each work week at the then applicable minimum-wage under N.C. Gen. Stat. § 95-25.14, and whether the Plaintiff was due and paid overtime under N.C. Gen. Stat. § 95-25.4. The Plaintiff has forecasted evidence that during the time

Plaintiff was employed with and performing service hours for Defendant, Defendant's policy did not require employed residents to perform service hours at all. [Doc. 3-9 at 10; Doc. 3-10 at 20]. It appears that it was only after Plaintiff had completed the 1000-hours program and was no longer employed for pay by Defendant that Defendant's service hours' policy was changed to require residents who were employed part-time to perform service hours. [See Doc. 3-11 at 12]. Specifically, the amended policy provided that residents who were employed *part-time* were required to perform 10 service hours each week. [Doc. 3-11 at 12; Doc. 1-2 at 1]. As such, during Plaintiff's tenure at the VRQ, Defendant's written policies did not support requiring Plaintiff to perform service hours given his status as a paid employee. The Plaintiff has also presented a forecast that tends to show that he worked more hours than are reflected in the pay records and in Defendant's work and service hours logs and that was not paid for his work during this undocumented time. [Doc. 3 at ¶¶ 48, 51, 61-71]. Also, to the extent that Plaintiff may have been wrongfully required to perform service hours, his forecast of evidence tends to show that, between his paid work as a Front Desk Manager and his unpaid service hours, Plaintiff often worked over forty (40) hours per week. [See Doc. 57-1].

In response, Defendant presents evidence that Plaintiff was paid at least minimum wage for his 1,007 work hours through the 1,000-hour program. [Doc. 47 at ¶ 17]. Defendant also presents evidence that the value of Defendant's provision of room and board to Plaintiff was greater than any amount Plaintiff can claim he is owed. [Doc. 47 at ¶ 29; see Doc. 59-1]. Defendant argues that the value of the room and board provided to Plaintiff is properly considered "wages," as defined by the FLSA, to the FLSA applies. [Doc. 48 at 12 (citing 29 U.S.C. § 203(m))]. Defendant, however, fails to cite to a comparable provision of the NCWHA defining "wages" to include the cost to the employer of providing room and board to an employee. [See id.].

As such, there remain genuine issues of material fact as to the total number of hours for which Defendant was required to pay Plaintiff minimum wage and whether Defendant owes Plaintiff overtime pay for hours worked in excess of forty (40) hours for any work week.

Summary judgment of Plaintiff's claims under the NCWHA, therefore, will be denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion to Dismiss [Doc. 49] is **GRANTED IN PART** and **DENIED IN PART**, in so far as the Motion is **GRANTED** with respect to Plaintiff's claims for record-

keeping violations under the FLSA and NCWHA, duress, undue influence, illegal contracts, intentional infliction of emotion distress, retaliation and wrongful termination under the FLSA and REDA, and for violation of 42 U.S.C. §§ 1983 and 1985, and those claims are **DISMISSED**; and the Motion is **DENIED** with respect to Plaintiff's claims for unpaid wages and overtime violations under the FLSA and NCWHA.

**IT IS FURTHER ORDERED** that Defendant's Motion for Partial Summary Judgment [Doc. 46] is **GRANTED IN PART** and **DENIED IN PART**, in so far as the Motion is **GRANTED** with respect to Plaintiff's claims for minimum wage and overtime violations under the FLSA and those claims are **DISMISSED**; and the Motion is **DENIED** with respect to Plaintiff's claims for minimum wage and overtime violations under the NCWHA.

**IT IS FURTHER ORDERED** that this matter will be set for trial during the September 9, 2019 term in the Asheville Division.

**IT IS SO ORDERED.**

Signed: March 27, 2019

Martin Reidinger
United States District Judge